UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DOUGLAS AUTOTECH
CORPORATION,

        Plaintiff,

v.

THE SCOTT FETZER
COMPANY,

        Defendant.
_____/

Case No. 1:07-CV-1062

Hon. Richard Alan Enslen

**OPINION**

"The use of these statutes of limitation is to preserve the peace of the kingdom, and to prevent those unnumerable perjuries which might ensue . . ." William Blackstone, *3 Commentaries on the Laws of England* *307 (1st ed.).

**INTRODUCTION**

This matter is before the Court on Defendant The Scott Fetzer Company's Motion to Dismiss. The Motion has been fully briefed and oral argument is unnecessary in light of the briefing. *See* W.D. Mich. L.C iv. R. 7.2(d). For the reasons which follow, Defendant's Motion to Dismiss will be granted as to the federal claims, but the state law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**BACKGROUND**

Plaintiff is the owner of industrial property located at 300 Albers Road, Bronson, Michigan; it purchased the property on December 14, 1989. (Compl. ¶ 5.) Defendant is the former owner of the property; it owned the property from 1978 to 1984. (*Id.* at ¶ 6.) In 1985, groundwater

contamination was discovered at the property in connection with the operation of a "chip shed" with a concrete waste storage vault. (*Id.* at ¶ 7.) During Defendant's ownership of the property, degreasers and others hazardous substances containing unacceptable levels of trichloroethane ("TCA") and trichloroethene ("TCE"), were used in connection with the "chip shed" and leached into the surrounding soils and groundwater. (*Id.* at ¶¶ 7-12.)

In June 1991, to remedy the soil and groundwater pollution attendant to the "chip shed," Plaintiff submitted a Remedial Action Plan to the Michigan Department of Natural Resources ("MDNR"). (*See* Proposed Remedial Action Plan, cover page, 1-2 (June 1991).) In September 1991, the remedial plan was approved by the MDNR with comments. (Letter of Gary Klepper 1 (Sept. 17, 1991).) The waste storage vault and surrounding soils were then removed from the property in 1992. (Letter of Jack Michaels 1 (Mar. 11, 1992).) Thereafter, Plaintiff constructed a groundwater extraction system utilizing a containment well, pumps, air stripping and monitoring wells. (Proposed Remedial Action Plan 20-34 (June 1991); Project Status Report 1 (Nov. 19, 2001).) The extraction/treatment system began start-up activities on December 17, 2001. (*Id.*) A later report to the MDNR confirmed that the remediation program operated successfully until May 1, 2001, when it was discontinued. (Project Status Report 2 (Nov. 19, 2001).)

Subsequent to the remediation, between 2003-2005, Plaintiff discovered that Defendant had operated degreaser pits at the industrial property and that these pits had caused extensive TCE contamination of the soils and groundwater. (Compl. ¶¶ 16-18.) Plaintiff has sued Defendant for recovery of its response costs as well as a declaration of future liability under sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42

U.S.C. §§ 9607 & 9613.  (*Id.* at ¶¶ 32-39.)   Plaintiff has also sued Defendant under Michigan environmental laws.  The Complaint was filed in this Court in October 2007.

This Motion seeks dismissal of the federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6) based on CERCLA's statute of limitations, among other arguments.

**LEGAL STANDARDS**

While Defendant's Motion to Dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Motion is based not only on Plaintiff's allegations, but also upon public documents relating to the remediation program at the property.  Under Rule 12(b), "if . . . matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."  *See also Sinclair v. Schriber*, 916 F.2d 1109, 1112 (6th Cir. 1990); 5C C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004).  This Motion calls for the application of the Rule.  The supplemental materials will not be excluded because they present the useful question of how, if at all, the limitation period is affected by the operation of a pollution remediation program.

Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial.  *Anderson v. Liberty*

*Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

While this analysis assumes the adequacy of discovery, a party cannot oppose summary judgment based on vague generalizations that discovery has been inadequate. Rather, under the language of Rule 56 and the case law of this Circuit, a party urging that discovery has been insufficient must file a specific affidavit establishing that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Rule 56(f); *Klepper v. First Am. Bank*, 916 F.2d 337, 343 (6th Cir. 1990); *Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995). Plaintiff has not filed such an affidavit here. Rather, it has merely suggested in a footnote that "further investigation into all of the releases is necessary before any related issues can be definitively adjudicated." (Resp. 8 n.5.) This kind of assertion is not persuasive to the Court and fails to meet the requirements of Rule 56(f).

In deciding summary judgment, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

The limitation argument arises from section 113 of CERCLA, which provides in pertinent part:

(2) Actions for recovery of costs

An initial action for recovery of the costs referred to in section 9607 of this title must be commenced--

> **(A)** for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and
>
> **(B)** for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.

In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

(3) Contribution

No action for contribution for any response costs or damages may be commenced more than 3 years after–

> **(A)** the date of judgment in any action under this chapter for recovery of such costs or damages, or
>
> **(B)** the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages

42 U.S.C. § 9613(g)(2)-(3).

These provisions of CERCLA were added as part of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. No. 99-499, 100 Stat. 1613 (1986). SARA both made explicit a previously recognized right of contribution for responsible parties and provided limitation protection applicable to the right of contribution. *See Sun Co., Inc. v. Browning-Ferris, Inc.*, 124 F.3d 1187, 1190 (10th Cir. 1997) (discussing legislative history).

This language is not clear either on its face or by reference to the statutory definitions contained in section 101 of CERCLA, 42 U.S.C. § 9601(23)-(24). Nevertheless, the Tenth Circuit Court of Appeals has determined a reading of the statute which renders all the statutory language useful and avoids an anomalous reading of the statute (by certain courts), which would leave many contribution actions without a controlling limitation period. *See Sun Co., Inc.*, 124 F.3d at 1191-93. The Tenth Circuit's reading has been endorsed by the Sixth Circuit Court of Appeals:

> Although we have no statute of limitations issue before us today, the Tenth Circuit, in *Sun Company,* directly confronted the issue and found that because a § 113(f) action was an action for the recovery of response costs referred to in § 107(a), it was covered by the language of § 113(g) which provides that "[a]n initial action for recovery of the costs referred to in section 9607 of this title must be commenced ... for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action ..." *Sun Company,* 124 F.3d at 1192 (citing 42 U.S.C. § 9613(g)(2)). The court found that the present civil litigation suit in the case, although an action for contribution, was the " 'initial action' for recovery of such costs." *Id.* While we need not adopt the Tenth Circuit's reasoning because a statute of limitations issue is not before our court today, we note that our resolution of this case in finding that § 113 is not completely independent of § 107 would render a similar result.

*Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 355 (6th Cir. 1998).

This reading of the limitation period has been applied by district courts in factual scenarios close to the present one. In *Cytec Indus., Inc. v. B.F. Goodrich Co.*, 232 F. Supp. 2d 821, 830-32

6

(S.D. Ohio 2002), Judge Graham of the Southern District of Ohio properly followed *Sun Co.* The court observed that, if *Sun Co.* was not followed, ". . .the statute of limitations for a PRP, such as Cytec, would be indefinite because a triggering event might never occur. This would undermine the certainty that statutes of limitations are designed to further." *Id.* at 832 (footnote and citation omitted.). The *Cytec* court also applied the six-year limitation period of section 113(g)(2)(B). *Id.*

In doing so, the *Cytec* court described the distinction between a "removal action" (as to which the three-year limitation period under section 113(g)(2)(A) would apply) and a "remedial action" (as to which the six-year limitation period under section 113(g)(2)(B) would apply) as follows:

> The statutes of limitations under § 9613(g)(2) differ depending on whether the response activity is a "removal" action, for which the limitations period is 3 years after completion of the removal action; or whether the action is a "remedial" action, for which the action must be brought within 6 years after the initiation of physical on-site construction of the remedial action. *See* § 9614(g)(2)(A)-(B). The classification of whether the activity was a removal action or a remedial action is determined as a matter of law and can be determined on summary judgment. *See Geraghty & Miller,* 234 F.3d at 926; *Advanced Micro Devices v. National Semiconductor Corp.,* 38 F. Supp. 2d 802, 809 (N.D. Cal. 1999); *Raytheon Const., Inc. v. ASARCO Inc.,* No. Civ. A 96 N 2072, 2000 WL 1635482, at *13 (D. Colo. Mar. 31, 2000).
>
> * * *
>
> Elements of remedial actions and removal actions "may overlap and semantics often obscure the actual nature of the cleanup performed." *Public Serv. Co. of Colo. v. Gates Rubber Co.,* 175 F.3d 1177, 1182 (10th Cir. 1999). In fact, "[a] response action may constitute both a removal and a remedial action, and a court is not constrained to find either term applicable at the expense of the other." *Hatco Corp. v. W.R. Grace & Co.,* 849 F. Supp. 931, 962 (D.N.J. 1994) (citing *General Elec. v. Litton Indus. Automation Sys.,* 920 F.2d 1415, 1419-20 (8th Cir. 1999)). Courts have, however, set forth some general observations regarding each type of response activity.
>
> Removal actions generally cost less, take less time, and are geared to address an immediate release or threat of release of a hazardous substance. *See Geraghty & Miller,* 234 F.3d at 926 ("removal actions generally are immediate or interim responses"); *Advanced Micro Devices,* 38 F. Supp. 2d at 810 ("Removal refers to short-action taken to halt the immediate risks posed by hazardous wastes") (internal

> quotations omitted); *Channel Master Satellite Sys., Inc. v. JFD Elecs. Corp.,* 748 F. Supp. 373, 385 (E.D.N.C. 1990) ("The courts have consistently found that the removal category was to be used in that limited set of circumstances involving a need for rapid action"); *Raytheon Constructors,* 2000 WL 1635482, at *13 (noting that removal actions are generally "only applied in that limited set of circumstances involving a need for rapid action") (internal quotations and citations omitted). Further, "[r]emoval concerns are more procedural in nature in that they speak to 'monitoring,' 'assessing,' and 'evaluating' the measures necessary to abate short-term, manageable environmental cleanup." *Rhodes v. County of Darlington, S.C.,* 833 F. Supp. 1163, 1182 (D.S.C. 1992).
>
> In contrast, remedial actions are usually permanent responses that address more extraordinary environmental dilemmas. *See Geraghty & Miller,* 234 F.3d at 926; *Rhodes,* 833 F. Supp. at 1182. The Tenth Circuit explained the characteristics of remedial actions as follows:
>
>> [A] remedial action seeks to effect a permanent remedy to the release of hazardous substances when there is no immediate threat to the public health. Remedial actions usually cost more and take longer.
>
> *Public Serv. Co. of Colo.,* 175 F.3d at 1182. In *Rhodes,* the court explained:
>
>> Remedial actions anticipate permanent solutions to contaminated sites. Hence, remedial actions, going to the crux of contamination, provide for substantive, complex measures of abatement and cure. Not surprisingly, remedial actions entail more expense and greater long-term planning. Remedial actions are permanent in scope and therefore require more time to prepare and implement.
>
> 833 F. Supp. at 1182; *see also Channel Master Satellite Sys.,* 748 F. Supp. at 385 ("[N]on-urgent situations are to be addressed as remedial actions").

*Cytec Indus.*, 232 F. Supp. 2d at 832-34.   *See also OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 523-24 (D. Conn. 2007) (holding that "remedial actions are 'generally long-term or permanent containment or disposal programs,' while

removal actions are 'typically short-term cleanup arrangements . . . .' " and citing *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1040 (2d Cir. 1985)).

This distinction is not the only useful commentary of the *Cytec Indus.* case. That case also involved the question of whether a large industrial property should be deemed one "facility" or multiple "facilities" for the purpose of determining CERCLA liability and the application of the limitation provisions. *Cytec Indus.* held that the property, which involved multiple ponds and landfills, was a single 54-acre "facility"–such that contribution actions must be filed within six years of the remediation action at the facility. *Cytec Indus.*, 232 F. Supp. 2d at 839. It did so utilizing the standards explained in *State of Cal. v. Hyampom Lumber Co.*, 903 F. Supp. 1389, 1391-94 (E.D. Cal. 1995), which cited with approval the Sixth Circuit's decision in *Kelley v. E.I. DuPont de Nemours & Co.,* 17 F.3d 836, 840 (6th Cir. 1994).

Applying these standards to this suit, the Court arrives at some ready conclusions. The "remediation action" limitation (under section 113(g)(2)(B)), rather than the "removal action" limitation (under section 113(g)(2)(A)), is applicable due to the nature and scope of the remedial action plan used at the facility. (*See* Proposed Action Plan 20-34.) This plan included the use of a large containment well, pumps, air-stripping and monitor wells. (*Id.*) The treatment system began start-up activities on Dec. 17, 1992. Therefore, the "physical on-site construction" of the remediation facilities pre-dated December 17, 1992.

Both the degreaser pits and the "chip shed" involved the same toxic chemical–TCE. Both sites involved common manufacturing uses of the facility. Neither the EPA or the MDNR had designated separate "operable units" for this facility. *Cf. United States v. Monsanto Co.*, 182 F. Supp. 2d 385, 400-04 (D.N.J. 2000) (determining that there were multiple removal actions where

9

the EPA had designated separate "operable units" at the facility). As such, the property is regarded as a single facility as to which a single limitation period is applicable. The limitation period under section 113(g)(2)(B) began not later than December 17, 1992. As such, the six-year limitation period expired on December 17, 1998. This lawsuit, instituted in 2007, was filed far outside of the limitation period. The late discovery of the additional TCEs does not provide a basis for extending the limitation period. *See Zeleznik v. United States*, 770 F.2d 20, 24 (3d Cir. 1985); *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997).

Therefore, the statute of limitation precludes Plaintiff's contribution action under section 107 of CERCLA. *See also Schaefer v. Town of Victor*, 457 F.3d 188, 209-10 (2d Cir. 2006) (making like finding). Additionally, Plaintiff's declaratory action under section 113 of CERCLA is barred because section 113 claims are subject to the same limitation period as the underlying section 107 contribution claims. As the Sixth Circuit said in *International Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997):

> A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred. "Because a declaratory judgment action is a procedural device used to vindicate substantive rights, it is time-barred only if relief on a direct claim would also be barred." *Stone v. Williams,* 970 F.2d 1043, 1048 (2d Cir. 1992), *cert. denied,* 508 U.S. 906, 113 S. Ct. 2331, 124 L. Ed. 2d 243 (1993); *see also Luckenbach S.S. Co. v. United States,* 312 F.2d 545, 548 (2d Cir. 1963). A contrary rule would allow a plaintiff to "mak[e] a mockery of the statute of limitations by the simple expedient of creative labelling." *Gilbert v. City of Cambridge,* 932 F.2d 51, 57 (1st Cir.), *cert. denied,* 502 U.S. 866, 112 S. Ct. 192, 116 L. Ed. 2d 153 (1991). IAM may not pursue a request for declaratory relief.

*Id.* (footnote omitted). *See also RSR Corp. v. Commercial Metals, Inc.*, 494 F. Supp. 2d 690, 700 (S.D. Ohio 2006).

**STATE LAW CLAIMS**

The above determinations leaves unresolved Plaintiff's various state law environmental claims against Defendant. Those pendant state law claims were asserted in the Complaint because they derive from a common nucleus of operative facts, such that supplemental jurisdiction under 28 U.S.C. § 1367 supported their assertion. (*See* Compl. ¶ 3.) However, since all federal law claims have been dismissed, the question now arises whether the supplemental claims should be dismissed pursuant to section 1367(c)(3), which so permits. *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

While the Court retains discretion to entertain the state law claims if justice so requires, the Court is of the opinion that it should dismiss those claims and leave them to resolution by the Michigan state courts. This practice best serves the state courts' interests in comity and is most consistent with the long-standing practice of judicial restraint by the federal courts as to matters of state law. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754 (6th Cir. 2000); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 254. (6th Cir. 1996). This is particularly so since there is great controversy as to important state law issues relating to such claims.

**CONCLUSION**

For the reasons given, summary judgment will be granted in favor of Defendant as to all federal law claims, and all state law claims will be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

DATED in Kalamazoo, MI:  
January 23, 2008

 /s/ Richard Alan Enslen           
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE